**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JUNIATA TERMINAL CO. INC. PROFIT SHARING PLAN U/A/D 1/1/87, | Civil Action No. 16-5369 (MAS) (LHG) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION** |
| STEVEN H. GIFIS, et al., | |
| Defendants. | |

**SHIPP, District Judge**

This matter comes before the Court upon Defendants Steven Gifis ("Gifis"), Nanergy Inc. ("Nanergy"), Nanergy Solar, Inc. ("Nanergy Solar"), and Nanergy NJ, Inc.'s ("Nanergy NJ") (the "Nanergy Defendants," and collectively with Gifis, "Defendants") motion to dismiss. (ECF No. 23.) Plaintiff Juniata Terminal Co., Inc., Profit Sharing Plan u/a/d 1/1/87's ("Plaintiff") filed opposition (ECF No. 26) and Defendants replied (ECF No. 27). The Court held oral argument on August 2, 2018. For the reasons set forth below, Defendants' motion to dismiss is GRANTED.

### I. Background[1]

Many facts in the Amended Complaint involve non-parties to this action, notably a company named Amelio Solar Inc. ("Amelio Solar"), which manufactured, developed and sold

---

[1] For the purposes of this motion to dismiss, the Court accepts as true and summarizes the facts alleged in the Amended Complaint. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (stating that on a Rule 12(b)(6) motion to dismiss, courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.").

systems for solar panel manufacture. (Am. Compl. ¶ 11, ECF No. 20.) Gifis and Zoltan J. Kiss ("Kiss") are shareholders of Amelio Solar and had served as its officers and directors. (*Id.* ¶ 9.) Gifis was also "Senior Advisor" to Kiss, served as Amelio Solar's "Special Advisor to the Chairman," and handled both Kiss's and Amelio Solar's finances. (*Id.* ¶¶ 10, 13.) In addition, Gifis was Executive Vice President of Nanergy NJ, Inc. and has "also done business under" Nanergy. (*Id.* ¶¶ 14, 15.) Broadly, Plaintiff alleges that "Gifis was the decision maker and alter ego, Doppelganger or second self of Kiss, Amelio [Solar], Defendant Nanergy, Defendant Nanergy Solar and Defendant Nanergy NJ." (*Id.* ¶ 16.)

### A. Planned Solar Panel Facility, GMP Loan to Amelio Solar, and Creation of a Chinese Joint Venture

Around February 13, 2009, Amelio Solar borrowed $1,500,000 from Genesis Merchant Partners ("GMP") (a non-party to this action) secured by all of Amelio Solar's assets ("GMP Loan"). (*Id.* ¶ 20.) Amelio Solar used the GMP Loan, plus an additional $1,000,000, to invest in a joint venture ("Chinese Joint Venture") with a Chinese photovoltaic manufacturer, Baoding Fengfan Solar Energy Co. ("Fengfan"). (*Id.* ¶¶ 21, 22.) Around March 26, 2009, Amelio Solar and Fengfan contracted for the construction of a solar panel production facility in China. (*Id.* ¶ 22.)

### B. Plaintiff's Loans to Amelio

Plaintiff subsequently made two loans to Amelio Solar and seeks damages arising out of the first of these loans.[2] (*Id.* ¶¶ 23, 25; Pl.'s Opp'n Br. 20., ECF No. 26.) On January 15, 2010, Plaintiff loaned Amelio Solar $750,000 ("Plaintiff's First Loan") in exchange for assignment of

---

[2] Plaintiff concedes that it does not seek damages based on this Second Loan. (Pl.'s Opp'n Br. 20.) As background, to complete the production of the solar panel manufacturing facility, on May 14, 2010, Plaintiff loaned Amelio Solar an additional $500,000, secured by the full interest in Amelio's assets, subordinate only to the prior pledge of those assets to GMP ("Plaintiff's Second Loan"). (*Id.* ¶¶ 25, 27.)

2

the final payment due to Amelio Solar from the Chinese Joint Venture after installation of a solar panel production module. (*Id.* ¶ 23.) In the loan documents, Amelio Solar promised that it would not assign the right to the final payment due Plaintiff to any other party. (*Id.* ¶ 24.) "The loan to Amelio [Solar] was based in part on representations made by Gifis as to the likelihood and reliability of repayment." (*Id.* ¶ 26.)

### C. Chinese Joint Venture's Loans to Amelio

In 2010, the Chinese Joint Venture loaned Amelio Solar $500,000 ("JV's First Loan") and $250,000 ("JV's Second Loan"). (*Id.* ¶¶ 29, 33.) To secure the JV's First and Second Loans, Amelio Solar and Gifis used the same collateral pledged to secure Plaintiff's First Loan and Plaintiff's Second Loan. (*Id.*) Plaintiff's First Loan and the JV's First Loan were both secured by the payment due to Amelio Solar from the Chinese Joint Venture. (*Id.* ¶ 29.) Plaintiff's Second Loan and the JV's Second Loan were secured by a full interest in all of Amelio Solar's assets, subordinate only to the prior pledge of those assets to GMP. (*Id.* ¶ 33.) To secure the JV's First Loan, Plaintiff alleges Gifis traveled to China in his own capacity—"not under the Amelio [Solar] banner"—to knowingly pledge the identical collateral already pledged to Plaintiff. (*Id.* ¶¶ 30-31.) Gifis was involved in the process of securing Plaintiff's First Loan, and Plaintiff based its decision to make the loans on Gifis's interactions. (*Id.* ¶ 32.)

### D. The Alleged Cover-Up

Later in 2010, Plaintiff discovered the possibility of the fraudulent transactions, and Gifis and Kiss attempted to cover-up the "fraudulent scheme" with the assistance of Feifei Lu ("Lu"), an agent for the Chinese Joint Venture. (*Id.* ¶¶ 35-36.) Around November 2010, Kiss signed a statement to Plaintiff denying that any collateral had been compromised (*id.* ¶ 37) and at the suggestion and direction of Gifis, Kiss later signed correspondence to Fengfan's Chairman

3

directing him to send the final $750,000 payment from the Chinese Joint Venture to Plaintiff (*id.* at ¶ 38). Kiss signed the correspondence in Plaintiff's presence and told Lu to hand deliver the correspondence to Fengfan's Chairman. (*Id.*) Later that day, however, Kiss and Gifis told Lu to destroy the correspondence, which she did, and instead to produce a "cover-up" letter from a fake Fengfan authority figure to give to Plaintiff. (*Id.* ¶¶ 39-40.)

### E. State Court Litigation

On December 3, 2012, GMP sued Amelio Solar and Kiss in Connecticut state court, resulting in a judgment against Amelio Solar and Kiss for $1,583,232. (*Id.* ¶¶ 41-42.) On March 25, 2011, Plaintiff sued Amelio Solar and Kiss in New Jersey state court (Defendants here were not parties to this action), resulting in a $2,461,128.95 judgment for Plaintiff.[3] (*Id.* ¶¶ 43, 46.) Following both state court judgments, Plaintiff, GMP, Kiss, and Amelio Solar entered into a settlement agreement in which Amelio Solar assigned its rights in the Chinese Joint Venture to GMP and Plaintiff retained its right to the $750,000 final payment from the Chinese Joint Venture. (*Id.* ¶¶ 47-48.) Amelio Solar and Kiss immediately breached the Settlement Agreement. (*Id.* ¶ 47.) Gifis negotiated directly with Fengfan without Plaintiff's knowledge or consent, which allegedly constituted intentional interference with Plaintiff's interest in the Chinese Joint Venture. (*Id.* ¶ 49.)

### F. Gifis's Role

Plaintiff alleges that Gifis was "the mastermind behind all the causes of action" in the Complaint and offers a 2011 e-mail message that Gifis drafted and sent to Kiss, for Kiss to send to Fengfan. (*Id.* ¶¶ 50-51.) Gifis acted on his own behalf and/or at the direction of Amelio Solar

---

[3] The Amended Complaint does not describe the state court action. Defendants claim that the state court action arose because Amelio Solar failed to repay Plaintiff's First and Second Loans. (Defs.' Moving Br. 2, ECF No. 23-2.) Plaintiff's opposition does not address this allegation.

4

and the Nanergy Defendants in perpetrating fraud and all Defendants "disregarded the corporate entity" and made "the corporate entity a mere instrumentality for Gifis's affairs." (*Id.* ¶¶ 54-57.)

### G. Sale of Solar Panels

In addition, Plaintiff alleges that Defendants committed fraud in connection with Plaintiff's purchase of solar panels. (*Id.* ¶¶ 61-75.) Gifis wanted to install a solar farm on top of a building owned by Amelio Solar. (*Id.* ¶ 63.) Gifis was also the president of the now-defunct and dissolved EPV Solar, Inc. ("EPV"), which sold solar panels, but Gifis allegedly did not have enough money to purchase them. (*Id.* ¶¶ 62, 65-66.) Plaintiff purchased the solar panels for Gifis. (*Id.* ¶ 67.)

Although the specification sheet stated that these solar panels were ETL or UL certified, Plaintiff contends that: (i) the panels were not certified, rendering them unmarketable (*id.* ¶¶ 71, 74); (ii) Gifis "knew that the panels were not ETL or UL certified"; and (iii) Gifis failed to disclose this material fact to Plaintiff (*id.* ¶¶ 72-73). Plaintiff also alleges that the bill of sale for the purchase of the solar panels contained Gifis's home address. (*Id.* ¶¶ 61, 68.)

### H. Procedural History

Plaintiff filed a Complaint on September 2, 2016. (ECF No. 1.) Defendants moved to dismiss (ECF No. 7) and on June 14, 2017, the Court granted the motion (June 14, 2017 Order, ECF No. 14). On November 20, 2017, Plaintiff filed an Amended Complaint. (Am. Compl. 1.) Plaintiff asserts three claims against all Defendants: Count One, common law fraud; Count Two, conspiracy to defraud; and Count Five, breach of contract. (Am. Compl. ¶¶ 76-90, 101-08.) Plaintiff asserts Count Three, intentional interference with economic benefit, and Count Four, breach of the implied covenant of good faith and fair dealing, against Gifis alone. (*Id.* ¶¶ 91-100.) Defendants move to dismiss all five counts for failure to state a claim.

## II. Legal Standard

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). On a motion to dismiss for failure to state a claim, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must "[review] the complaint to strike conclusory allegations[.]" *Id.* The court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff[.]" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). In doing so, however, the court is free to ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).

III. **Discussion**

   A. **The Nanergy Defendants**

Plaintiff asserts all claims against the Nanergy Defendants; however, the Amended Complaint does not contain sufficient allegations with respect to these claims. Plaintiff only alleges that Gifis was Executive Vice President of Nanergy NJ, Inc. (Am. Compl. ¶ 14), has "done business under" Nanergy, Inc. (*id.* ¶ 15) and that Nanergy and Amelio Solar and Nanergy, Inc. operated out of the same address (*id.* ¶ 12). Plaintiff also makes the conclusory allegation that Gifis was the decision maker and alter ego, Doppelganger or second self of the Nanergy Defendants (*id.* ¶¶ 19, 58) and utilized the Nanergy Defendants to violate the law (*id.* ¶ 56). Relatedly, the Amended Complaint contains no factual allegations that relate to piercing the corporate veil of the Nanergy Defendants to hold Gifis personally liable, and the Court dismisses any claims against Gifis pursuant to this theory without prejudice. The Court, therefore, dismisses all claims as to the Nanergy Defendants without prejudice.

   B. **Count One, Common Law Fraud**

In New Jersey, "[t]o establish common-law fraud, a plaintiff must prove: '(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.'" *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 172-73 (2005) (quoting *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997)). Additionally, fraud claims are subject to the heightened pleading standard of Rule 9(b), which "requires that in all averments of fraud . . . the circumstance constituting fraud . . . shall be stated with particularity." *Hemy v. Perdue Farms, Inc.*, No. 11-888, 2013 WL 1338199, at *9 (D.N.J. Mar. 13, 2013).

7

Here, Plaintiff alleges that Defendants committed common law fraud with respect to: (1) the impaired collateral securing Plaintiff's First Loan; and (2) Plaintiff's purchase of solar panels. (Am. Compl. ¶¶ 29, 33, 67, 70-74.) As to the impaired collateral, Plaintiff alleges that Defendants fraudulently secured the JV's First and Second Loans with the collateral already used to secure Plaintiff's First Loan. (*Id.* ¶¶ 29-33; Pl.'s Opp'n Br. 21.) Defendants respond, among other things, that even assuming that Gifis made material misrepresentations in connection with the loans at issue, Plaintiff has failed to plead damages flowing from this double pledging of collateral. (Defs.' Moving Br. 16.) Defendants also assert that Plaintiff's loans to Amelio Solar have priority over the subsequent loans made by the Chinese Joint Venture to Amelio Solar. (*Id.*)

At oral argument, Defendants' counsel stated that Plaintiff made its loans to Amelio Solar first, and unless there was a change in the priority structure as a result of Defendants' conduct, merely repledging the same collateral could not cause Plaintiff damages. (Aug. 2, 2018 Rough Uncert. Tr. 5:1-7.) Conversely, Plaintiff's counsel focused on the significance of Plaintiff's failure to receive the final payment from the Chinese Joint Venture, and stated that Plaintiff pled that it invested an additional $175,000 to $200,000 into the Chinese factory in order to be paid, but that Plaintiff was never paid. (*Id.* at 15:13-20.)

The Court agrees with Defendants. In a case concerning secured creditors with a perfected security interest in the *same* collateral, the Supreme Court of New Jersey noted that "[w]hen no special priority rules are in effect, N.J.S.A. 12A:9-312(5)(a) governs the determination of priority between parties with a security interest in the same collateral" and provides that "[c]onflicting security interests rank according to priority in time of filing or perfection." *Del. Truck Sales, Inc. v. Wilson*, 131 N.J. 20, 26-27 (N.J. 1993) (quoting N.J.S.A. §

12A:9-312(5)(a)). As pled, the Amended Complaint lacks specific information regarding perfection of these security interests; however, it does speak in terms of valid pledges and does not suggest that Plaintiff or the Chinese Joint Venture failed to perfect their security interests at or around the time each loan was made. (*See, e.g.*, Am. Compl. ¶¶ 23, 25, 29, 33.) Accordingly, the allegations suggest that Plaintiff's loans are senior to the loans made by the Chinese Joint Venture. Absent allegations that Defendants disregarded the priority rules and permitted the Chinese Joint Venture to exercise its right to the collateral before Plaintiff, based on the facts pled, Plaintiff has superior rights to the collateral, ahead of any subsequent pledge. While Plaintiff may have ultimately been damaged because the account receivable was never paid, it appears that the damage was not as a result of the double pledge. The Court, therefore, dismisses Count One without prejudice with respect to the double pledge of collateral.[4]

As to Plaintiff's purchase of solar panels, based on the allegations in the Amended Complaint, it appears that the agreement for the sale of the panels was technically between Plaintiff and EPV. (*See, e.g., id.* ¶¶ 64 ("EPV, also run by Defendant Gifis and now defunct, was providing panels for the solar farm"), 65 ("EPV had 400 KW of solar panels . . . that Defendant Gifis envisioned utilizing"), 60 ("The Panels were shipped from EPV").) Plaintiff alleges,

---

[4] Plaintiff cites to *The Provident Bank v. Pandolfelli*, No. 09-2070, 2011 WL 5900809 (D.N.J. Oct. 24, 2011) to support its argument that the Court can infer a defendant's intent to deceive lenders from a double pledge of collateral. (Pl.'s Opp'n Br. 27.) This unreported Opinion from the Bankruptcy Court for the District of New Jersey, however, is distinguishable from the instant case. Provident Bank commenced an adversary proceeding to prevent the discharge of defendant's debt pursuant to 11 U.S.C. § 523(a) for false pretenses, false representations, or actual fraud. *Id.* at *1. At issue was defendant's motion to vacate a default judgment pursuant to Federal Rule of Civil Procedure 60. *Id.* at *1. First, due to the procedural posture, the Bankruptcy Court's analysis centered on whether defendant had a meritorious defense. *Id.* at *3. Second, the elements that a plaintiff must prove to bar a debtor's discharge for fraud are not identical to the elements of common law fraud. *See id.* at *3. Third, the Bankruptcy Court cited many out-of-circuit cases in its analysis. *See id.* at *3-4. Finally, in contrast to this case, it is unclear whether Provident Bank was an earlier or later creditor with rights in collateral.

9

however, that Gifis failed to disclose material information to Plaintiff or made a material misrepresentation about the solar panels. (*Id.* ¶¶ 72-73, 82-83.) Regardless, Plaintiff seemingly attempts to pierce the corporate veil of EPV to hold Gifis personally liable. (Pl.'s Opp'n Br. 24 ("The Plaintiff will pierce the corporate veil of EPV and any of the named defendants."), ¶ 25 ("Plaintiff paid EPV (aka Defendant Gifis)); (Defs.' Reply Br. 6-7, ECF No. 27); *see, e.g.*, Am. Compl. ¶ 64 ("There is no coincidence that Amelio and Defendant Nanergy Inc. for which Defendant Gifis was the principal, were located at the same Ludlow address."), ¶ 68 (the bill of sale contained Gifis's home address).)

Plaintiff does not plead that Gifis is a shareholder of EPV and the Complaint contains insufficient facts to properly plead this theory of liability. *See The Mall at IV Grp. Props., LLC v. Roberts*, No. 02-4692, 2005 WL 3338369, at *3 (D.N.J. Dec. 8, 2005) ("[A] court[, however,] may impose liability on an *individual* or entity *normally subject to the limited liability protections of the corporate form*" through the equitable remedy of "piercing the corporate veil.") (emphasis added); *LM Ins. Corp. v. All-Ply Roofing Co.*, No. 14-473, 2017 U.S. Dist. LEXIS 53127, at *17 (D.N.J. Apr. 5, 2017) (quoting *Accurso v. Infra-Red Servs., Inc.*, 23 F. Supp. 3d 494, 510 (E.D. Pa. 2014) (internal quotation marks omitted)) ("Although veil-piercing is not a separate cause of action, but rather a basis for a cause of action against particular individuals, on a motion to dismiss [] a court 'must examine . . . whether the facts pleaded . . . state a cause of action on a theory of piercing the corporate veil.'").[5] The Court, therefore,

---

[5] To plead a theory of piercing the corporate veil, a plaintiff must allege two overarching elements: (1) "such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist;" and (2) "the circumstances must indicate that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *The Mall at IV Grp. Props., LLC v. Roberts*, No. 02-4629, 2005 WL 3338369, at *3; *see also State Dep't of Envtl. Prot. v. Ventron Corp.*, 94 N.J. 473, 500 (N.J. 1983). With respect to the first element, courts consider the factors set forth in *Craig v. Lake Asbestos of Quebec*,

dismisses any fraud claims with respect to the solar panel transaction based upon a theory of piercing EPV's corporate veil.

### C. Count Two, Conspiracy to Defraud and False Pretenses[6]

Under New Jersey law,

> a civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage."

*Gandi*, 184 N.J. at 177 (quoting *Morgan v. Union Cty. Bd. of Chosen Freeholders*, 268 N.J. Super. 337, 364 (App. Div. 1993), *cert. denied*, 135 N.J. 468 (1994)).

Here, Plaintiff alleges that Defendants "agreed to defraud, [and] made material misrepresentations and false promises to the Plaintiff." (*Id.* ¶ 87.) Plaintiff alleges facts similar to those found under Count One and provides only conclusory allegations that these alleged misrepresentations constitute "conspiracy to defraud" under New Jersey law. The Nanergy Defendants are wholly absent from allegations with respect to the fraudulent loans and only included in conclusory statements with respect to the solar panel transaction. The Amended Complaint, therefore, fails to allege "a combination of two or more persons" and the Court dismisses Count Two without prejudice.

---

*Ltd.*, 843 F.2d 145 (3d Cir. 1988). The Amended Complaint fails to set forth sufficient facts with respect to the *Craig* factors. *See, e.g., United States ex rel. Pilecki-Simko v. Chubb Inst.*, No. 06-3562, 2010 WL 1076228, at *13 (D.N.J. Mar. 22, 2010) (granting a motion to dismiss where "boilerplate allegations . . . do not speak to the factors identified by the Third Circuit for determining whether a subsidiary is the mere instrumentality of the parent"); *State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC*, 646 F. Supp. 2d 668, 680 (D.N.J. 2009) (dismissing count of complaint for failure to allege facts as to the *Craig* factors even "assum[ing] arguendo that [d]efendants' conduct is of the type sufficient to justify piercing the corporate veil").

[6] Based on the Court's independent research, false pretenses, outside of a consumer fraud action, is a crime, not a civil cause of action in New Jersey.

### D. Count Three, Intentional Interference with Economic Advantage

To establish a claim for intentional interference under New Jersey law, "a plaintiff must prove: (1) actual interference with a contract; (2) that the interference was inflicted intentionally by a defendant who is not a party to the contract; (3) that the interference was without justification; and (4) that the interference caused damage." *Dello Russo v. Nagel*, 358 N.J. Super. 254, 268 (App. Div. 2003). Furthermore, a "plaintiff must show that it had a reasonable expectation of economic advantage that was lost as a direct result of defendants' malicious interference and that it suffered losses thereby." *Lamorte Burns & Co. v. Walters*, 167 N.J. 285, 305-06 (2001) (emphasis added). "Causation is demonstrated where there is proof that if there had been no interference there was a reasonable probability that the victim of the interference would have received the anticipated economic benefit." *Id.* at 306 (citation omitted).

Here, Plaintiff alleges Gifis intentionally interfered with Plaintiff's economic benefit from the Chinese Joint Venture by "negotiating directly with Fengfan without the knowledge and consent of Plaintiff." (Am. Compl. ¶ 49.) It appears that Plaintiff bases this claim on a 2011 e-mail message that "Gifis drafted for and sent to Kiss for Kiss to then share with Fengfan." (*Id.* ¶ 52.) The Complaint, however, does not allege that Kiss sent the e-mail message to anyone else. (*See id.*) The Court, accordingly, dismisses Count Three without prejudice.

### E. Count Four, Breach of Implied Covenant of Good Faith and Fair Dealing

"[E]very contract in New Jersey contains an implied covenant of good faith and fair dealing." *Kalogeras v. 239 Broad Ave., LLC*, 202 N.J. 349, 366 (2010) (quoting *Sons of Thunder v. Borden, Inc.*, 148 N.J. 396, 420 (1997)). The implied covenant of good faith requires that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract[.]" *Id.* (quoting *Palisades Props., Inc. v.*

*Brunetti*, 44 N.J. 117, 130 (1965)). By its terms, the implied covenant of good faith applies only to the contracting parties.

Here, Plaintiff does not specifically identify the agreement at issue (*see* Am. Compl. 97-100); however, based on the quotations from the Amended Complaint included in its briefing, it appears that Plaintiff bases this claim on Plaintiff's loans to Amelio Solar (Pl.'s Opp'n Br. 33-34). Plaintiff states that "Gifis' bad faith has denied the Plaintiff the benefit of the bargain intended between the Chinese Joint Venture, Amelio Solar and the Plaintiff" suggesting that the contract upon which Plaintiff basis its claim is technically between Plaintiff, Amelio Solar, the Chinese Joint Venture, and Gifis (*see* Am. Compl. ¶ 98) and that Gifis was effectively a party to the contract as "the alter-ego, Doppelganger and second self of Amelio" (*id.* ¶ 99). Although the prior paragraphs are incorporated into the counts of the complaint, there are multiple agreements discussed in the complicated factual history. Based on the Court's review, the Amended Complaint does not contain a single contract to which the Chinese Joint Venture, Amelio Solar, Plaintiff and Gifis are all parties. Plaintiff must identify which contract is the basis of this claim. The Court, accordingly, dismisses Count Four without prejudice.

### F. Count Five (Breach of Contract)

To state a breach of contract claim under New Jersey law, a party must allege "a valid contract between the parties, the opposing party's failure to perform a defined obligation under the contract, and the breach caused the claimant to sustain damages." *EnviroFinance Grp., LLC v. Envtl. Barrier Co., LLC*, 113 A.3d 775, 787 (N.J. Super. Ct. App. Div. 2015) (citing *Murphy v. Implicito*, 920 A.2d 678 (N.J. Super. Ct. App. Div. 2007)). As noted above in Section III.B. it appears that the contract at issue was between Plaintiff and EPV, not between the parties to this

action, and Plaintiff has not alleged sufficient facts to plead the piercing of EPV's corporate veil.[7] The Court dismisses Count Five without prejudice.

## IV. Conclusion

For the reasons set forth above, Defendant's motion to dismiss is GRANTED.[8] An Order consistent with this Memorandum Opinion will be entered.

s/ Michael A. Shipp<br>
**MICHAEL A. SHIPP**<br>
**UNITED STATES DISTRICT JUDGE**

**Dated:** August 30, 2018

---

[7] Defendants also assert that the breach of contact claim is time barred. (Defs.' Moving Br. 24.) Defendants submitted with their moving brief a November 18, 2009 invoice from EPV to Plaintiff that reflects the solar panel transaction. (Gifis Decl. Ex. A, ECF No. 23-1.) Defendants assert that the Uniform Commercial Code ("UCC") governs this sale and provides for a four-year statute of limitations on breach of contract actions between merchants.[7] (Defs.' Moving Br. 24.) According to Defendants, pursuant to the UCC, the statute of limitations on the claim ran in 2012 and even if New Jersey's six-year statute of limitations applies, the claim was time barred as of November 2015. (*Id.*) Plaintiff, in opposition, states that Plaintiff is a trust, not a merchant, and the UCC does not apply to the transaction; therefore, New Jersey's six-year statute of limitations governs. (Pl.'s Opp'n Br. 35-36.) Plaintiff cites *Lopez v. Swyer*, 62 N.J. 267, 272 (N.J. 1973) to stand for the proposition that a cause of action accrues when the injured party discovers the basis for the claim (Pl.'s Opp'n Br. 36), and Plaintiff allegedly discovered the breach in 2011 (Am. Compl. ¶ 75.) On a motion to dismiss, however, the Court declines to consider the invoice at issue. The Court notes, however, that the case cited by Plaintiff does not appear to control the Court's analysis, as it deals with the statute of limitations and accrual of a malpractice claim. *See Lopez v. Swyer*, 62 N.J. 267, 271-72 (N.J. 1973).

[8] It is unclear whether the trust/profit-sharing plan has standing to sue in its own right, or whether the trustee of the trust must bring this action on the trusts' behalf. *See Mandelbrot v. Armstrong World Indus. Asbestos Pers. Injury Settlement Trust, undefined*, 618 F. App'x. 57, 58 (3d Cir 2015) (citing *In re 1031 Tax Grp., LLC*, 439 B.R. 47, 64-65 (Bankr. S.D.N.Y. 2010) (collecting cases) (describing "bedrock rule" that "only the beneficiary or trustee of an express trust has standing to sue to establish and enforce the trust"). In a supplemental submission, Plaintiff identified itself as "a private retirement trust" (Pl.'s May 24, 2018 Correspondence 4, ECF No. 30); however, based on the Court's independent research, the cases that mention this type of trust are from California courts. If Plaintiff elects to file a Second Amended Complaint, Plaintiff must properly establish the trust's independent ability to sue or file through another appropriate party.

14